Good morning, Your Honors. Police to court. My name is Jaime Hasso and I represent the petitioner in this matter, Mr. Jorge Ibarra-Flores. Again, I apologize to the audience because we do have another voluntary departure case which deals with the same issues presented in the last and in fact the first case which was submitted on the briefs. Just briefly as to the facts of this case, the petitioner in this case is married, has two U.S. citizen children, ages 11 and 3. He entered the United States on or about January of 1989 and he's left only once when he went to go see his sick father in 1996. When he returned to the United States, he was confronted by an immigration official. He was advised by the immigration official that based upon the time that he was here in the United States, in excess of six years at that point, he would qualify to obtain his permanent residency. All he needed to do was sign some additional documentation and go to a different office. The petitioner in this case did in fact sign those documents and then he went and proceeded to go to that different office. When he arrived at that office, he learned that he in fact had waived his rights to see an immigration judge and he was then subsequently returned to Mexico. The immigration judge in this case was advised of these facts and the petitioner in this case moved the immigration judge formally for an order instructing the Department of Homeland Security to provide any documentation relating to the alleged voluntary departure which would include cross-examination of any official. The immigration judge denied that request, instructed the trial attorney to produce any documents she had in the file that particular day which evidenced the voluntary departure. The trial attorney indicated two times during that hearing that she had no evidence whatsoever to substantiate the allegation that the petitioner in fact had a voluntary departure. Despite the respondent's request for the formal motion, despite the lack of evidence, the immigration judge still found that the contact between the petitioner and the officer was in fact a voluntary departure. The government has argued that Vasquez Lopez of course controls this matter and let me address that quickly in terms of Vasquez Lopez. Vasquez Lopez was a case in which the petitioner entered in 1988 and during a period between 1992 and 1994, he had left the United States and re-entered. Upon his re-entry, he was apprehended by immigration officials, conceded his deportability, sought and requested voluntary departure. The Vasquez Lopez case is essentially the Ninth Circuit's affirmation of the board's holding and Romales. And of course, Romales is the case which indicates that the time limitations within the statute for cancellation removal is not the sole means by which the physical presence could be terminated. The case of Vasquez and Lopez and Romales are similar in that the aliens never contested the issues of the voluntary departure. And that certainly is a difference between this case and both of those. So the court had indicated and requested, what is that bright line? Where is that little niche that we can grab onto to make the difference between all the cases that are coming before the court? Vasquez Lopez stands for the proposition that when the alien does not contest the facts of the voluntary departure, certainly the voluntary departure can terminate that physical presence. That is essentially the holding of Romales and that is the position of the Ninth Circuit. However, the Eighth Circuit and the Seventh Circuit have indicated, well, how do you determine when you got that voluntary departure? And that is when you look to the understanding of the alien. Does he understand the terms of the agreement? Did he offer or request the voluntary departure? And that is a question of fact. A question of fact is reviewed by this court for substantial evidence and the Eighth Circuit indicated that you got to find some evidence in the file. And in that case, there was no evidence in the file. Now, as I have learned in that case is that government counsel presented at the time of oral argument, hey, wait a minute, I have that evidence. I have an I-213. An I-213 is a record of the deportable alien. And the Eighth Circuit said, that is great, but except the petitioner in the case is contesting the facts of the document that you are presenting. If the alien is contesting the fact of the voluntary departure, we must remand it back to the immigration judge in order for the court to make a specific finding in the first instance. The question of whether or not a person has voluntary departure is simply a question of fact for the court to determine. It is not discretionary whatsoever. It is an assessment based on all the evidence of whether or not the person in fact understood and requested the voluntary departure and whether or not there is evidence in the file of the voluntary departure. In this case, there certainly was absolutely no evidence in the file of the voluntary departure. There certainly was no agreement between the parties as to leave the United States. And in fact, the petitioner in this case would have enjoyed the right to go before an immigration judge because the law at that point in time indicated that all he needed was seven years of physical presence in the United States, be a person of good moral character, and show extreme hardship to himself and to any qualified relatives. The government counsel has already conceded the fact that during those proceedings, the law was different. You did not need to have the full seven years at that point in time. You could acquire the physical presence during the course of the proceeding. So in that light, he certainly would have been eligible for suspension of deportation had he been placed in removal – excuse me, in deportation proceedings. That is in fact one of the – that is in fact the position of the petitioner is that he thought he was helping his case by signing the documents. It was in a considerable agreement between the parties that they would in fact remove him from the United States under that understanding. Are you claiming he was somehow tricked or – Absolutely. Hoodwinked into doing it? Absolutely. When the – he has a conversation with an immigration official and reveals all the facts. I've been here for six-plus years. I have family here in the United States. And the immigration official says, great, just sign these documents to a Mexican national, lack of education, no attorney to be present. He's going to say, absolutely, I'll do whatever you say. He's sent to a different office, and at that point in time, he learns, wait a minute, I just waived all of my rights. And in fact, he testified that he was told that he was crazy for doing something like that. But nonetheless, it took that action. Didn't you first raise this issue of tricking in the reply brief? No. In fact, I believe we argued this before the immigration judge. And he said on the record in the transcripts his position. What had happened? That he was told that based on the facts to go sign these documents and go to a different office. I even struggle to try to figure out what the different office might be because it looks like all the evidence we have is the one answer that he gave. As I understand it, he said, so I did what the officer told me. I went outside of the United States. And when I went to the offices, the officer told me I was told I was crazy. And I got no right. Where was it he went to? Apparently, he went to the Mexican side of the border and identified himself, provided the documents to the officials there. And that's the point where he acquired the knowledge of what he had just done. He's not able to describe to us what he signed. And so really all we have about what he signed is his description of the characterization given to it by the Mexican immigration authorities. And we don't know exactly what type of documents there were. And according to the Eighth Circuit decision, citing the Seventh Circuit decision, that's something that definitely needs to be enlightened and further explored. And we do that in the first instance before the immigration judge. So what result do you ask for here? In this case, essentially, the court has two different options. One, the court can see, based on the lack of evidence in the file, that there, in fact, was no voluntary departure. You remanded for simply purposes of going further with the cancellation or removal with the finding that he, in fact, does not have a voluntary departure. Or you remanded for purposes of determining specifically whether or not there's a voluntary departure under the theory and the analysis provided by the Eighth Circuit and Seventh Circuit. If there's any further questions, I'll reserve my time. Thank you. Good morning, Your Honor. William Irb again for the Department of Justice, representing the respondents in this matter. May it please the Court, Your Honor. Your Honor, again, the question is, as in the other case, whether or not there's substantial evidence to support a finding that the petitioner's under the threat of being placed in removal proceedings. In our opinion, substantial evidence supports that the petitioner was given the option. And, in fact, the petitioner admitted that he was given voluntary departure. And I would point to his testimony during the proceedings, Your Honor. If I can take a second. The immigration judge says, have you received voluntary departure? I think so. Once in 1996. But I did not get, I got no option. You got what? No option when I was detained by the immigration officer and the officer told me to sign off the document. Go outside and talk to the immigration officers right at the border and they will help you. Is that what you rely on to say that he agrees that there was a voluntary departure? Yes, Your Honor. Is that all you have? That's all the evidence in the record, Your Honor. What about this tricking? He was tricked into signing something. He didn't know what it was. And they say, sign this, everything will be fine. That's merely a characterization. That's merely a characterization of petitioner's counsel's representation of the facts, Your Honor. What are the facts? What do you say happened with the original immigration officer that saw him and had him sign the papers? The immigration officer, apparently he assigned a form that would be a 210, Your Honor, which is an agreement to voluntary departure. He says that he did sign a form. And in regards to the trickery, he says that he once he went to another section of the INS, that he did not understand that he no longer had any rights and that he had to return back to Mexico, I guess. What's wrong with the idea of remanding it back to the immigration judge to go into these facts? Because the facts we've got now are kind of skinny as to how to decide what really happened. Right. This case is a little bit distinguishable, Your Honor, from the earlier case. I mean, there's certainly much more substance in the prior case than this case in regards to the grand voluntary departure. But that's not the sole issue in the case. The question then becomes, Your Honor. I didn't understand. Are you agreeing it should be remanded back? No. No, I'm not, Your Honor. But I'm not agreeing to that, Your Honor. What I am saying is that there's less evidence of voluntary departure as there was in the prior case. But the government's position is that the alien agreed to voluntary departure like he did, like the other alien. This case is different from the other one because in this record we have the indication that he actually signed a document. The problem is we don't have evidence. He says, I had no option. What does he mean by that? And says that he thought he was signing something that, or at least it can be inferred from this, that he didn't know he was signing something that constituted voluntary departure. And he didn't find that out. And we're all kind of reading tea leaves here with this one non-bacterial statement. But the scenario as I see it, he went outside the United States and went to the offices. So I draw the same inference. He's probably talking to somebody over on the Mexico side. And they said, You're nuts. You're crazy. You signed something which he plainly didn't understand by his narrative. And his narrative is all we have to go on. And so I think you're being correct in saying, look, this case has some unusual evidentiary factual type questions, which the other case doesn't present in the same fashion. And I kind of get stuck right on that evidentiary thing. I mean, I understand the government's problem in keeping track of all these people. But if the government doesn't present anything that shows what it was he signed, this description really doesn't tell us very much about what he signed, let alone what he thought he was signing and what he may arguably have agreed to. Right. But, Your Honor, I would have to go back to the second part of the argument, which is that at the border, he was only given the option of either voluntary departing or being placed in proceedings as a matter of law under Section 240B. He didn't even know what they had been. Again, he had no option. As far as he understands, OK, you got me. Sign this. I'll sign this. And off he goes. Well, I would point to Hernandez Lewis, Your Honor, in the case, which this my circuit said under the suspensions law, under suspension statute, very similar fact pattern here. Alien came illegally into the United States, was granted voluntary departure despite the fact that the record established that he was not told that he had a right to counsel or was ever explained what his rights were upon signing the application or the form that allowed him to return. Well, I guess I'm really trying to make a different point, not in terms of the significance of his understanding, but from an evidentiary perspective, he can't tell us. By his description, he apparently doesn't know what he signed. So he's not testifying I signed X. He's telling us when I went back to Mexico and showed this paper to whoever was on that side, that person told me I was crazy. And that's all we have to go on to infer a belief that he signed something that might represent voluntary departure. But there's an important point the court's missing here, Your Honor, or maybe I haven't brought to your attention, and that is, it's his burden. Our burden is to show the alien's removal by clear and convincing evidence. It's his burden to establish that he's eligible for relief. And our position is, Your Honor, if there's an admission that he was given and agreed to voluntary departure and signed a piece of paper, that is enough. That's sufficient, substantial evidence. Well. Behind. I hear what you're saying, but the circumstances where it's the service that controls the paperwork and where it's the service that elected not to respond to the request for documentation, it's hard to say that he should be faulted for not having the records which the service has. Your Honor, the petitioner's counsel, I'm not sure if it was his counsel who was at the proceedings below, the problem could have quickly been resolved by merely requesting a FOIA. Well, if you're in the midst of a hearing, you're not going to get a FOIA. No, not prior, because he submitted a brief and he argued the petition in a brief before the immigration judge. He could ask for it in continuance. Again, it's not our burden. The problem in this case was if the file had been transferred, transferred venue, so the INS did not have the original file, at least my understanding, Your Honor. And so it becomes a question of burden, of proof, and then the issue of whether or not there's substantial evidence. And this goes back to the Seventh and Eighth Circuits, sort of trying to make an exception, a kind of exception in this court's Vasquez-Lopez case. What is the agreement in this case as distinguished from the last case? Voluntary departure. There's really two different cases, but they both end up with the same result. In this case, we have testimony that he was given voluntary departure, as we did in the other case. What we don't have in the other case was admission that he signed some form. In this case, we have him signing some form. Again, it's a question of substantial evidence, burden, but also a question of matter of law. What is the deal that's being struck at the border? This court has long followed that deal, the ability of that implicit agreement for the Attorney General to return people rather than placing them in proceedings. Hernandez-Luez is one of those cases. If he signed a form at the border, a form that was handed to him by an immigration officer, wouldn't there be a copy of it on file somewhere in the enormous haystack of papers that the immigration? One would believe that there might be, Your Honor. That's correct. Wouldn't that be the best evidence of what he signed? In an ideal world, I assume so, Your Honor. That'd be true. But we have his admission. Just by the description here, it sounds like this is something that takes place at the port of entry. Obviously, you were here a few minutes ago, and we heard an argument that said currently under 240B, but the statute's evolved over time, and now I have to admit I'm lost in terms of which statute applied at one time. I'll have to go back and look at this. But his argument was made that in the instance of somebody arriving in the United States, in this case it apparently is at the port of entry, the voluntary departure provision of the statute does not apply. What does that mean to us here? I don't believe that's the scenario we have in this case, Your Honor. My understanding, though, from the record is a little bit light on this, is that the alien was caught coming into the United States, and in fact there's a little bit of confusion. I don't agree that the alien was sent, that there was a discussion at the border. In fact, it appears that he was apprehended and then moved to another section of the INS and then sent to the border. And in the other case, the fact is that he had voluntary, he was granted voluntary departure on three other occasions when he was trying to sneak in under the border. In summation, Your Honor, the government's position is there's substantial evidence in the record to support a finding that the petitioner was granted voluntary departure in lieu of being placed in removal proceedings. Furthermore, this Court should defer to the Board of Immigration's finding in Romales and this Circuit's own decision in Vasquez-Lopez in which a return, acceptance of voluntary departure cut short an alien's ability to accrue continuous physical presence for purposes of Section 240A of the INA, cancellation of removal. Is there any further questions, Your Honor? Thank you. Thank you for your time. Government counsel is really starting at the wrong point in the discussion. He's under the premise that in fact there is, in fact, a voluntary departure. That is a contested issue of fact in this case. The petitioner has indicated, where's the evidence? Show me the evidence and that's exactly what the Eighth Circuit and the Seventh Circuit is saying, that there must be evidence in the file of the voluntary departure. Not only that, there must be a clear understanding by the petitioner and the government of what the terms are. Government counsel indicates the agreement is we're not going to send you to deportation proceedings. Well, in this case, it would have been a joy for him to be placed in those proceedings because he would have been eligible for suspension of deportation. This is not a factor like the other case where, in fact, had he been placed in removal proceedings, they would have cut off his time. He was in different types of laws where the acquisition of physical presence could occur during the pendency of the proceedings. Government counsel indicates, well, the trial counsel, which was me during the lower court proceedings, could have applied for a FOIA to obtain those documents. Well, trial counsels are advised not to request FOIAs because that is a delay in the proceedings. You're looking about, I don't know, anywhere between one to two years before a FOIA request is often found. They are placed in complex versus simple tracts, complex tracts. You're looking at a very long duration of time. Had trial counsel done something of that type of tactic, it would have been looked and frowned upon by the immigration judge. And now it would have appeared as if I was placing the burden upon the government to produce the documents rather than pursuing a formal motion, which I did. We do appear to have a finding by the immigration judge that there was a voluntary departure order in 1996. That is her finding based on the testimony that was provided. And all the evidence that speaks to that is basically the one response or the two responses by the petitioner. And so the first issue we may face is that substantial evidence to support a finding of voluntary departure without getting to all the legal discussion of what the implications of voluntary departure would be. Correct. That would be the first as to whether or not substantial evidence supports finding a voluntary departure. However, if you follow the Eighth Circuit analysis, that still is not enough. You must determine whether or not the alien understood the terms and actually sought the request of relief and whether or not there's evidence in the file. Thank you. Thank you. The case just argued is submitted. And we now move to Benton versus Oregon Student Assistance Commission. Thank you.
judges: Goodwin, Clifton, Rhoades